UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

INTRAVISUAL INC.                                    :

                        Plaintiff,               :
                                                       Case No. 2:10-cv-90-JRG
               v.                                 :

FUJITSU LIMITED ET AL.                          :

                        Defendants.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

**PLAINTIFF INTRAVISUAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF
PURSUANT TO P.R. 4-5(a)**

---

Alan M. Fisch
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005
(202) 682-3500
alan.fisch@kayescholer.com

Oliver C. Bennett (*pro hac vice*)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000
oliver.bennett@kayescholer.com

Date: June 1, 2012                    Attorneys for Intravisual Inc.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

I.     LEGAL STANDARD GOVERNING CLAIM CONSTRUCTION................................2

II.    THE INVENTION OF THE '845 PATENT ...................................................3

III.   CONSTRUCTION OF DISPUTED TERMS & PHRASES OF THE '845
       PATENT .....................................................................................................4
       A.   "macroblock" ..................................................................................5
       B.   "reference macroblock"...................................................................6
       C.   "coded macroblock"........................................................................8
       D.   "difference with the reference macroblock"....................................9
       E.   "difference bit" .............................................................................11
       F.   "encoded with the difference based on the reference macroblock".....................13
       G.   "reference bit"...............................................................................14
       H.   "receiving component," "storing component" and "decoding component"..........15

CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alltech, Inc. v. Cenzone Tech, Inc.*,
  2007 WL 5793393 (S.D. Cal. Jan. 4, 2007) ...........................................................................9

*Amazon.com, Inc. v. barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) .............................................................................................3

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
  512 F.3d 1338 (Fed. Cir. 2008) .....................................................................................12, 15

*Beneficial Innovations, Inc. v. Blockdot, Inc.*,
  No. 2:07-CV-263-TJW-CE, 2010 U.S. Dist. LEXIS 35784 (E.D. Tex. Apr. 12, 2010) ..........18

*Envirotech Corp. v. Al George, Inc.*,
  730 F.2d 753 (Fed. Cir. 1984) ...............................................................................................3

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
  810 F. Supp. 2d 795 (E.D. Tex. 2011) .................................................................................18

*eWinWin, Inc. v. Groupon, Inc.*,
  No. 8:10–cv–2678, 2011 WL 6012194 (M.D. Fla. Sept. 5, 2011) .........................................17

*Hoechst Celanese Corp. v. BP Chems., Ltd.*,
  78 F.3d 1575 (Fed. Cir. 1996) .............................................................................................10

*Intervet Inc. v. Merial Ltd.*,
  617 F.3d 1282 (Fed. Cir. 2010) .........................................................................................6, 8

*Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*,
  649 F.3d 1350 (Fed. Cir. 2011) .....................................................................................16, 18

*Laryngeal Mask Co. Ltd. v. Ambu A/S*,
  618 F.3d 1367 (Fed. Cir. 2010) ...........................................................................................12

*Leader Techs., Inc. v. Facebook, Inc.*,
  692 F. Supp. 2d 425 (D. Del. 2010) ...............................................................................17, 18

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ...............................................................................................2

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
  382 F.3d 1354 (Fed. Cir. 2004) ...........................................................................................16

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)....................................................2, 3

*Medisim Ltd. v. Bestmed LLC*,
   No. 10 Civ. 2463, 2011 U.S. Dist. LEXIS 76222 (S.D.N.Y. July 7, 2011) ............................16

*Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005) ...............................................................................................7

*Orion IP, LLC v. Staples, Inc.*,
   406 F. Supp. 2d 717 (E.D. Tex. 2005) .....................................................................................7

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .......................................................................................passim

*RFID Tracker Ltd. v. Wal-Mart Stores, Inc.*,
   545 F. Supp. 2d 571 (E.D. Tex. 2008) .....................................................................................7

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
   279 F.3d 1357 (Fed. Cir. 2002) .......................................................................................12, 15

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) ...............................................................................................2

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001) ...........................................................................................6, 7

*Thorn EMI N. Am., Inc. v. Intel Corp.*,
   936 F. Supp. 1186 (D. Del. 1996)............................................................................................3

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
   Nos. 04 C 5312 et al., 2006 U.S. Dist. LEXIS 80153 (N.D. Ill. Oct. 31, 2006).................16, 19

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) .................................................................................................2

Pursuant to the Docket Control Order (Dkt. No. 274) entered February 7, 2012 and P.R. 4-5(a), plaintiff Intravisual Inc. ("Intravisual") respectfully submits its Opening Claim Construction Brief setting forth proposed constructions for claim terms and limitations in U.S. Patent No. 6,614,845 ("the '845 Patent").

## PRELIMINARY STATEMENT

The '845 Patent relates to the field of video compression technology and, in particular, the H.264 video compression standard used in data-intense applications such as high definition television and Blu-Ray Disc players.  The '845 Patent was developed at GTE Laboratories (now Verizon Laboratories, Inc.) as part of its efforts to enable large amounts of video data to be sent across its telephone network.  The inventor of the '845 Patent, Dr. Faramarz Azadegan, is a prolific inventor with multiple patents in the field of video compression technology.  His work has been widely recognized in the industry, and in 1999 Dr. Azadegan was awarded an Emmy Award for technical achievement for leading a team of scientists at Toshiba in the development of an important DVD formatting technology.

Plainly a thought leader in this complex technical field, Dr. Azadegan's '845 Patent provides a highly inventive, clear and elegant solution to video compression needs.  Accordingly, Intravisual submits that the '845 Patent is readily understandable on its face and that the terms in the asserted claims do not require construction by the Court.  To the extent that the Court does find that certain terms require construction, the meanings of those terms are clearly set forth in the specification and other intrinsic evidence.  It is this intrinsic evidence that Intravisual's proposed constructions follow.  Defendants, on the other hand, having no viable non-infringement positions, identified numerous claim terms that they contend require construction. The proposed constructions offered by the Defendants, moreover, find little or no support in the intrinsic evidence in some instances.  Defendants' aim is thus plainly to throw enough "mud" in

the hope that some will stick. The Court should not be persuaded by Defendants' efforts, and Intravisual's constructions — which most closely align with the patents' teachings — should be adopted to the extent the Court determines any construction is necessary.

## I.   LEGAL STANDARD GOVERNING CLAIM CONSTRUCTION

Claim construction is a question of law.[1]   When construing the claims of a patent, a court considers the literal language of the claim, the patent specification and the prosecution history.[2] Of these sources, the specification is "always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term."[3]   However, "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'"[4]

A court may also consider extrinsic evidence, including expert and inventor testimony, dictionaries and learned treatises, in order to assist it in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works.[5]   Extrinsic evidence, however, is considered less reliable and less useful in claim construction than the patent and its prosecution history.[6]

In addition, a court should interpret the language in a claim by applying the ordinary and

---

[1] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 388-90 (1996).

[2] *Id.* at 979.

[3] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

[4] *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

[5] *Phillips*, 415 F.3d at 1318-19; *Markman*, 52 F.3d at 979-80 (citations omitted).

[6] *Phillips*, 415 F.3d at 1318-19 (discussing "flaws" inherent in extrinsic evidence).

accustomed meaning of the words in the claim.[7]  The ordinary and accustomed meaning of claim

terms denotes the meaning that a person having ordinary skill in the pertinent art would ascribe

to the terms in the context of the entire patent, including its specification.[8]  If the inventor clearly

supplies a different meaning, however, then the claim should be interpreted according to the

meaning supplied by the inventor.[9]

　　　　Finally, it should be noted that a patent claim is not a "nose of wax" that a party can mold

to suit its litigation strategy.[10]  Accordingly, when a party proposes a litigation-driven

construction that conflicts with the intrinsic evidence, the court should reject that construction.[11]

## II.　　THE INVENTION OF THE '845 PATENT

　　　　The '845 Patent issued on September 2, 2003, from U.S. Patent Application Serial No.

08/941,785.  Entitled "Method and Apparatus for Differential Macroblock Coding for Intra-

Frame Data in Video Conferencing Systems," the '845 Patent describes systems and methods for

compressing and decompressing video images.  Specifically, the '845 Patent aims to "achieve a

reduction in the information content of the video transmission by applying mathematical

methods to reduce the redundancy of the contents of one video frame in comparison to

another."[12]

---

[7] *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed. Cir. 1984).

[8] *Phillips*, 415 F.3d at 1313.

[9] *Markman*, 52 F.3d at 980 (noting that patentee is free to be his own lexicographer, but emphasizing that any special definitions given to words must be clearly set forth in patent).

[10] *See, e.g., Amazon.com, Inc. v. barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

[11] *See Thorn EMI N. Am., Inc. v. Intel Corp.*, 936 F. Supp. 1186, 1199 (D. Del. 1996).

[12] Ex. 1, '845 Patent at 1:28-31.

To achieve this goal, the '845 Patent discloses an inventive method and apparatus for improving video compression by differential macroblock coding.[13] Thus, in one exemplary embodiment, the '845 Patent describes compressing a video frame by (1) dividing a frame into 16 pixel by 16 pixel macroblocks;[14] (2) calculating two differences for each macroblock using data from the macroblocks immediately above and to the left;[15] (3) coding the smallest of the two differences or the macroblock itself;[16] (4) including in the compressed video stream an indication of whether a difference or the macroblock itself was coded;[17] and (5) if the difference was coded, including an additional indication in the compressed video stream of whether the difference was obtained using data from the macroblock above or to the left.[18] The compression described in the '845 Patent is useful in a variety of contexts where compression of large amounts of video data is required, such as in high definition television of Blue-ray DVDs.

## III.    CONSTRUCTION OF DISPUTED TERMS & PHRASES OF THE '845 PATENT

Intravisual has asserted independent claims 63 and 65 and dependent claims 64 and 66 of the '845 Patent.  Claims 63 and 65 cover a method and system "of decoding for intra-frame encoding with an intra-frame," respectively.  Intravisual does not believe that any of the terms in the asserted claims require construction as they are readily understandable on their faces.  Defendants, by contrast, have requested construction of seven claim terms or phrases.  In

---

[13] *See, e.g., id.* at Abstract.

[14] *Id.* at 8:10-12.

[15] *Id.* at 14:15-30.

[16] *Id.* at 12:30-33, 14:35-46.

[17] *Id.* at 12:45-51, 14:54-55.

[18] *Id.* at 12:51-63, 14:55-57.

addition, Defendants assert that three claim terms are governed by 35 U.S.C. § 112, ¶ 6.  As explained below, Intravisual believes that the majority of these terms need not be construed.  For the Court's convenience, attached as Exhibit 2 is a chart containing claims 63-65, in which each claim term proposed for construction is highlighted in context.

### A.   "macroblock"

All of the asserted claims of the '845 Patent recite the terms "reference macroblock" and/or "coded macroblock."   Intravisual believes that the term "macroblock" need not be construed and should be given its plain meaning.  Alternatively, should the Court construe this claim term alone, it should be construed to mean "a 16 x 16 region of the image."   Indeed, this reflects the plain meaning and is supported by the specification.  The '845 Patent explains that a "a picture (or frame) is divided into a slice or group of blocks," each of which is "divided into macroblocks."[19]  Each macroblock "relates to 16 pixels by 16 lines."[20]

Although Defendants do not dispute that a macroblock is a 16 x 16 region of the image, they seek to add the limitation to the construction of "macroblock" that the 16 x 16 region must be of "a single frame."  Such a limitation is extraneous because the claim language explicitly requires that "a reference macroblock" be "from a single frame" and "a coded macroblock" be from the same frame."[21]  Thus, Defendants' proposed construction cannot be correct because it

---

[19] *Id.* at 7:66-8:10.  As illustrated in Fig. 5, a "video sequence" is comprised of "a group of pictures," which consists of "multiple frames or pictures."  Each frame or picture is made up of "multiple slices (or groups of blocks)" and within each slice there are multiple macroblocks.  *Id.* at 8:26-39.

[20] *Id.* at 8:10-11; *id.* at 13:14-21("Each block contains an 8-pixel by 8-lines set of pixels, and each macroblock contains four blocks," thus comprising 16 x 16) & Fig. 12.

[21] *See id.* at Claim 63.

would render explicit claim language redundant.[22]

### B.    "reference macroblock"

Claims 63-66 of the '845 Patent use the term "reference macroblock."  Intravisual asserts that "reference macroblock" need not be construed and should be given its plain and ordinary meaning.  Indeed, the term "reference" is a well understood English term, not a technical term, the meaning of which will be readily apparent to the jury.[23]  The claims further expressly define the reference macroblock as one that is in an "adjacent positional relationship" to the coded macroblock and which is used for obtaining "a difference."   Thus the claims fully set forth the meaning of this term rendering any construction unnecessary.[24]  This meaning, moreover, is consistent with the teachings of the '845 Patent, which describes using data from one or more reference macroblocks for comparing with a coded macroblock "in order to determine a difference."[25]  Transmitting only such differences, rather than the entire frame, results in

---

[22] *See Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1290 (Fed. Cir. 2010) (reversing claim construction because, "[i]f the term 'specific to PCV-2' meant that the epitope must be found only on PCV-2 and no other antigen, then the subsequent limitation 'and not specific to PCV-1' would be redundant"); *Phillips,* 415 F.3d at 1314 ("the claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel"); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1325 (Fed. Cir. 2001) (rejecting construction that would render claim language "mere surplusage").

[23] *See*, *e.g.*, *Phillips*, 415 F.3d at 1314 ("[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").

[24] *See, e.g., id.* at 1314 ("Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms . . . To begin with, the context in which a term is used in the asserted claim can be highly instructive.") (citations omitted).

[25] Ex. 1, '845 Patent at 4:24-28.  *See, e.g., id.* at 12:27-36 (describing implementation where coding macroblock is "compared with at least two other reference macroblocks").

improved video compression.[26]  Accordingly, should the Court construe the term "macroblock,"

discussed above, Intravisual contends that any further construction of the term "reference" is

unnecessary and would not further clarify the claim language.[27]

    Defendants, by contrast, suggest that "reference macroblock" should be construed as "a

16 x 16 region [*i.e.*, a macroblock] from the same frame but having a different location than the

coded macroblock."  Such construction is improper as it would make other claim limitations

redundant.[28]  For example, claim 63 recites "a reference macroblock *from a single frame*," which

corresponds to Defendants' proposed limitation of being "from the same frame."[29]  Defendants'

construction thus adds nothing more than what is already expressly set forth in the remainder of

the claim.  Likewise, claim 63 also recites the step of "receiving a coded macroblock from the

same frame in an adjacent positional relationship to the reference macroblock,"[30] which the

parties agree means "located immediately to the right or immediately below the reference

macroblock."[31]  By very definition, therefore, a reference macroblock *must* have "a different

location than the coded macroblock," as a macroblock cannot be both "adjacent" and have the

---

[26] *See id.* at 4:45-49.

[27] *See*, *e.g.*, *RFID Tracker Ltd. v. Wal-Mart Stores, Inc.*, 545 F. Supp. 2d 571, 587 (E.D. Tex. 2008) (noting that "although every word used in a claim has a meaning, *not every word requires a construction*") (quoting *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D. Tex. 2005) (emphasis added)).

[28] *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."); *Telemac Cellular*, 247 F.3d at 1325 (rejecting construction that would render claim language "mere surplusage").

[29] Ex. 1, '845 Patent at 24:14,

[30] *Id.* at 24:15-17.

[31] Joint Claim Construction and Prehearing Statement, Dkt. #281, at 1.

same location.  Thus, Defendants' proposed construction must be rejected as redundant of the other claim limitations.[32]

### C.  "coded macroblock"

Claims 63-66 of the '845 Patent use the term "coded macroblock."  Intravisual asserts that this element need not be construed and should be given its plain meaning, as it is understandable on its face to refer to the macroblock that has been coded.[33]  No further construction is necessary.

Alternatively, should the Court determine that this claim term needs construing, it should be construed to mean "data representing a 16 x 16 region of the image [*i.e.* a macroblock[34]]."  Such construction reflects the plain meaning of "coded" and is supported by the claim language which refers to the "coded macroblock" as one that "was coded" and which is subsequently "decod[ed]."  The specification likewise explains that an "aspect of the invention includes a method of decoding," which involves "receiv[ing] a coded macroblock, which was coded based on a difference with the reference macroblock."[35]  Thus, it is clear that the term "coded

---

[32] *See Intervet Inc.*, 617 F.3d at 1290 ("reversing claim construction because, "[i]f the term 'specific to PCV-2' meant that the epitope must be found only on PCV-2 and no other antigen, then the subsequent limitation 'and not specific to PCV-1' would be redundant."); *Phillips,* 415 F.3d at 1314 ("the claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel").

[33] *See*, *e.g.*, *Phillips*, 415 F.3d at 1314 ("[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").

[34] Should the Court separately construe the term "macroblock," such construction should govern its use in the claim term "coded macroblock" as well.

[35] Ex. 1, '845 Patent at 3:1-6.

macroblock" merely refers to a data representation of a macroblock – as opposed to the actual macroblock itself – in accordance with Intravisual's proposed construction.

Defendants' proposed construction of "the macroblock being decoded," by contrast, is redundant of language appearing elsewhere in the claims. For example, claim 63 recites the step of "decoding the coded macroblock."[36] Reading Defendants' proposed construction in context would result in the step of "decoding the macroblock being decoded." Such repetition does not provide any further clarity as to the meaning of the claim term and should be rejected.[37]

D.     "difference with the reference macroblock"

Claims 63 and 65 of the '845 Patent recite the phrase "difference with the reference macroblock." Intravisual contends that this term need not be construed, as its plain and ordinary meaning is readily understandable. Indeed, both parties agree that a difference is the result of performing a subtraction, demonstrating that the term "difference" is well understood on its face.

To the extent that the Court decides to construe this term, it should be construed to mean "the data remaining after subtracting the 16 x 16 region to be coded from data from the reference macroblock." This is the plain meaning supported by the explicit claim language: the "coded macroblock . . . [i]s coded based on a difference with the reference macroblock."[38] The specification also explains that "macroblock coding results from the *difference* between the coding macroblock and one of the reference macroblocks."[39] As noted earlier, both parties agree

---

[36] Ex. 1, '845 Patent at 24:21.

[37] *See Alltech, Inc. v. Cenzone Tech, Inc.*, 2007 WL 5793393, at *8 (S.D. Cal. Jan. 4, 2007) (rejecting construction as "inadequate because it essentially restate[d] the claim language").

[38] Ex. 1, '845 Patent at 24:15-18, 38-42.

[39] *Id.* at 11:63-66 (emphasis added).

that a difference is the result obtained by performing a subtraction, and thus is plainly the data remaining after subtracting the data in one macroblock from the data in another, as reflected in Intravisual's construction.[40]  Though a difference between macroblocks is calculated to facilitate video compression in accordance with the invention of the '845 Patent,[41] there is no limitation on what the precise calculation must be so long as it is based on data from the relevant macroblocks.

In contrast, Defendants advocate that that this claim term be limited to a subtraction involving each individual pixel of a macroblock.  Such a construction, however, impermissibly excludes embodiments of the patent from the scope of the claims.[42]  Indeed, in one exemplary embodiment of the '845 Patent, an "average value for *all pixel values* within" each block of the macroblock is calculated.[43]  That is, just like in Intravisual's proposed construction, *data* from the reference macroblock is obtained.  Then, instead of subtracting each individual pixel value in the coding macroblock from the value of the corresponding pixel in the reference macroblock, as in Defendants' proposed construction, the specification explains that the difference between the *average values* for all pixels in each block is calculated.[44]  Again, as set forth in Intravisual's construction, *data* from the reference macroblock is used to obtain the difference with the coded

---

[40] *See, e.g., id.* at Fig. 15, Fig. 16A, and 14:8-31 (describing subtraction of reference macroblock DC component values 98, 100, 92, and 99 from coding macroblock DC component values 103, 90, 94 and 90 respectively, resulting in DC component values of 5, -10, 2 and -9).

[41] *See id.* at 2:47-53 ("one aspect of the invention includes a method of data compression . . . . compris[ing] . . . determining a difference between the selected macroblock and at last one other macroblock"); *id.* at 2:64-66.

[42] *See Hoechst Celanese Corp. v. BP Chems., Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996) (holding that a claim construction that excludes a preferred embodiment is rarely, if ever, correct).

[43] Ex. 1, '845 Patent at 14:10-12 (emphasis added) & Fig. 15.

[44] *Id.* at 14:27-35 and Figs. 16A & 16B.

macroblock.  Defendants' construction thus improperly adds limitations to the claims that contradict the specification and should be rejected.

### E.     "difference bit"

Claims 63 and 65 of the '845 Patent recite the term "difference bit."  Intravisual contends that this term need not be construed, as its plain and ordinary meaning is readily understandable. To the extent that the Court decides to construe this term, it should be construed to mean "an indication in the syntax."  In particular, the specification teaches that the "syntax" is the information in the video stream referring to the arrangement of the various elements. [45]   The specification further teaches that an indication is added to the syntax to identify "whether the difference of a macroblock is coded, or whether the macroblock is coded by standard I-frame coding."[46]   Indeed, the remainder of the claim specifies what the difference bit does, and thus it is properly understood as "*an indication in the syntax* designating that the coded macroblock is encoded with the difference based on the reference macroblock."

Defendants, by contrast, advocate a narrow interpretation that would limit this term to a single bit.  Defendants' construction is unsupported by black letter patent law, as well as being contrary to the specification.  In particular, the claim term "difference bit" is preceded by "a" in claims 63 and 65.[47]   It is well settled that an indefinite article "a" or "an" carries the meaning of one or more:

---

[45] *See, e.g., id.* at 10:46-52 and Fig. 8; *id.* at 12:12-19 and Fig. 10.

[46] *Id.* at 12:42-48.

[47] *Id.* at Claims 63 and 65.

> [T]his court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.' That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention.  The exceptions to this rule are extremely limited: a patentee must 'evince[ ] a clear intent' to limit 'a' or 'an' to 'one.' . . . An exception to the general rule that 'a' or 'an' means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule.[48]

Here, claims 63 and 65 are open-ended, containing the phrase "comprising."  Nothing in the claims, specification, or prosecution history requires a departure from the rule that "a" means "one or more."  On the contrary, the patent explicitly contemplates the use of more than one bit:

> The above-described preferred embodiment discloses two reference macroblocks based on limiting the size of the IP_MB and A/L components to a single bit for greater efficiency, but *if the number of bits are increased in these components* to represent additional pointing vectors, then more than two reference macroblocks may be used.[49]

Thus, it is clear that the "difference bit" should not be limited to a single one-bit component.[50]

Nor does the difference bit have to be "associated with each coded macroblock" as Defendants allege, as the '845 Patent teaches that indications of a "coding mode can be signaled at the

---

[48] *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008) (citations omitted); *see also Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1370 (Fed. Cir. 2002).

[49] Ex. 1, '845 Patent at 15:36-41 (emphasis added).

[50] While the patent teaches that a different bit is "*preferably* a one bit component" in particular embodiments (*id.* at 12:48, emphasis added), Federal Circuit precedent prohibits reading such limitations into the claims.  *See Laryngeal Mask Co. Ltd. v. Ambu A/S*, 618 F.3d 1367, 1372 (Fed. Cir. 2010) (stating that the Federal Circuit "do[es] not generally limit claims to the preferred embodiment.") (citing *Phillips*, 415 F.3d at 1323 ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.")).

picture level or at the macroblock level."[51]

F.   **"encoded with the difference based on the reference macroblock"**

Claims 63 and 65 of the '845 Patent recite the phrase "encoded with the difference based on the reference macroblock."  Intravisual contends that this term need not be construed and should simply be given its plain and ordinary meaning.   Indeed, the claim describes exactly what the difference bit is doing, and nothing further is require to understand the claim.

However, should the Court decide to construe the term, it should be construed to mean "encoded based on the data remaining after subtracting the 16 x 16 region to be coded with data from the reference macroblock" in accordance with Intravisual's proposed construction of the term "difference with the reference macroblock."  As noted earlier, this construction is supported by the specification, which discloses an embodiment that "provides for comparing a coding macroblock to at least one other reference macroblock in order to determine a difference" and explains that "[t]he coding macroblock is then *encoded with the difference*."[52]  Intravisual's proposed construction is also supported by the claim language.  Indeed, the phrase "the difference based on the reference macroblock" clearly has an antecedent basis in the term "difference with the reference macroblock," discussed above.[53]  Thus, based on the plain

---

[51] Ex. 1, '845 Patent at 9:10-11.

[52] *Id*. at 4:24-28 (emphasis added); *see also id.* at 12:39-43 ("the difference is to be encoded), *id.* at 14:42-43 ("if a difference is to be coded").

[53] Both phrases in the claim describe the coded macroblock.  Claim 63 recites "receiving a coded macroblock . . ., which was coded based on a difference with the reference macroblock."  In a later element, the claim refers back to "the coded macroblock [which] is encoded with the difference based on the reference macroblock."  Defendants' proposed construction, to the extent Intravisual understands it, appears to recognize the connection to the prior claim term, "difference with the reference macroblock."  Joint Claim Construction and Prehearing Statement, Dkt. #281, Ex. B at 4.

13

language of the claims, the macroblock must be encoded based on the data remaining after calculating the "difference with the reference macroblock," which is reflected by Intravisual's proposed construction.

Defendants' construction, on the other hand, is unhelpful and redundant in context,[54] and thus should be rejected.  Defendants' construction should be rejected for the further reason that it ignores the limitation "based on the reference macroblock," and is likely to confuse a jury.

G.      "reference bit"

Dependent claims 64 and 66 of the '845 Patent recite the term "a reference bit." Intravisual contends that this term need not be construed and should simply be given its plain and ordinary meaning.  However, should the Court decide to construe the term, it should be construed, consistent with Intravisual's construction of "difference bit," to mean "an additional indication in the syntax."  Again, the "syntax" refers to the information in the video stream referring to the arrangement of the various elements.[55]  The specification further teaches that, in addition to the difference bit designating the coding mode, the syntax contains an additional indication that "designates the reference macroblock for the difference computation."[56]  In particular, the reference bit designates "if the difference is based on the macroblock to the left of the macroblock to be coded" or "if the difference is based on the macroblock above the macroblock to be coded."[57]  Indeed, the remainder of the claim specifies what the reference bit does, and thus it is properly understood as "*an additional indication in the syntax* designating the

---

[54] *See* supra n. 32.

[55] *See, e.g.,* Ex. 1, '845 Patent at 10:46-52 and Fig. 8; *id.* at 12:12-19 and Fig. 10.

[56] *Id.* at 12:51-52.

[57] *Id.* at 12:52-57.

location of the reference macroblock against which the difference is determined for decoding the coded macroblock."

Like "difference bit", Defendants again propose limiting this term to a single bit.  As discussed previously, however, "a" carries the meaning of "one or more" in open ended claims such as those in suit.[58]  Moreover, nothing in the specification requires or even supports limiting "reference bit" to a single bit.  Indeed, although one of the embodiments discussed in the specification utilizes a one-bit "reference bit," referred to as "A/L,"[59] the patent explicitly envisions an embodiment where "A/L would possibly require more than one bit"[60] and states that "*if the number of bits are increased in these components* to represent additional pointing vectors, then more than two reference macroblocks may be used."[61]  Thus, it is clear that the "reference bit" should not be limited to a single one-bit component.

### H.     "receiving component," "storing component" and "decoding component"

#### 1.     "receiving component," "storing component," and "decoding component" Should Not Be Construed Under 35 U.S.C. § 112, ¶ 6

Defendants contend that the terms "storing component" and "decoding component," used in claim 65, and the term "receiving component" used in claims 65 and 66 are means-plus-function terms governed by 35 U.S.C. § 112, ¶ 6.  Intravisual disagrees.  Where claim language does not recite the term "means," the claim presumptively does not invoke 35 U.S.C. § 112, ¶

---

[58] *See Baldwin Graphic Sys.*, 512 F.3d at 1342-43; *Tate Access Floors*, 279 F.3d at 1370.

[59] *Id.* at 12:51-57.   Further, this embodiment should not be imported into the claims.  *See* supra n. 50.

[60] Ex. 1, '845 Patent at 12:62-63.

[61] *Id.* at 15:36-41 (emphasis added).

15

6.[62]   The Federal Circuit has explained that "the use of the word 'means' is central to the analysis," and thus, "the presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome."[63]   Accordingly, the Federal Circuit has "seldom held that a limitation not using the term 'means' must be considered to be in means-plus-function form."[64]

The presumption can only be overcome where the challenger demonstrates that "the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'"[65]   However, "the Federal Circuit has not required the claim term to set forth a specific structure" to avoid § 112, ¶ 6 treatment.[66]   Instead, "it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies structures by their function."[67]   Accordingly, the key inquiry is "whether the term is one that is understood to describe structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term 'means for.'"[68]

---

[62] *Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1356 (Fed. Cir. 2011).

[63] *Id.* (citation omitted).

[64] *See Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1362 (Fed. Cir. 2004).

[65] *Id.* at 1358 (citation omitted).

[66] *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, Nos. 04 C 5312 et al., 2006 U.S. Dist. LEXIS 80153, at *38 (N.D. Ill. Oct. 31, 2006) (citation omitted).

[67] *See Lighting World*, 382 F.3d at 1359-60 (citation omitted); *see also Medisim Ltd. v. Bestmed LLC*, No. 10 Civ. 2463, 2011 U.S. Dist. LEXIS 76222, at *33 (S.D.N.Y. July 7, 2011).

[68] *Lighting World*, 382 F.3d at 1360.

*Leader Technologies, Inc. v. Facebook, Inc.* is instructive.  There, the defendant argued that the claim term "component" does not connote sufficient structure to avoid means-plus-function treatment for the claim terms "context component," "tracking component," and "storage component."[69]  In analyzing the argument, the court began by applying the strong presumption that the terms connoted sufficient structure.[70]  Then, the court consulted the surrounding claim language, which further described these claim terms: "a computer-implemented ***context component*** of a web-based server," "a computer-implemented ***tracking component*** of the network-based system," and "the data and metadata stored on a ***storage component*** of the web-based computing platform."[71]  Based on "the phrasing used in the Claims," the Court concluded there was "sufficient structural identification for each of the three terms" and therefore held that means-plus-function treatment was not appropriate.[72]

Similarly, here, "receiving component," "storing component," and "decoding component" are all entitled to a strong presumption that the terms connote sufficiently definite structure so as to avoid the application of § 112, ¶ 6.  None of these terms is simply a nonce word or a verbal construct that is not recognized as the name of structure.  For example, the

---

[69] *Leader Techs., Inc. v. Facebook, Inc.*, 692 F. Supp. 2d 425, 432 (D. Del. 2010).

[70] *Id.*

[71] *Id.* (emphasis in original).

[72] *Id.* at 432-33.  Although the patent at issue in *Leader Techs.* contained an explicit definition of "component" in the specification, this is not necessary to avoid means-plus-function treatment. *See eWinWin, Inc. v. Groupon, Inc.*, No. 8:10–cv–2678, 2011 WL 6012194, at *15-16 (M.D. Fla. Sept. 5, 2011) (concluding that the "presumption flowing from the absence of the term 'means'" has not been overcome even though one of two patents-in-suit did not include a definition of "component").

specification describes video codec 110 and audio codec 112 as components of terminal 30,[73] and it is well known that "codecs" are implemented in hardware or software.[74]  Thus, as used in the patent, the terms at issue would be recognized as structural.

Moreover, claims 65 and 66 include detailed language describing the structural limitations of these claims terms, which further impart structure sufficient to avoid means-plus-function treatment, as recognized by the court in *Leader Techs.*, discussed above. For example, claim 65 states:  "a *storing component* configured to store a reference macroblock from a single frame," "a *receiving component* configured to receive a coded macroblock from the same frame in an adjacent position relationship to the reference macroblock," and "a *decoding component* configured to decode the coded macroblock based on the difference."[75]  Analogous language also appears in the specification.[76]  Accordingly, the terms "receiving component," "storing component," and "decoding component" are sufficiently structural such that § 112, ¶ 6 does not apply.[77]

---

[73] *See* Ex. 1, '845 Patent at 5:13-20.

[74] "The term 'codec' refers to a coder decoder."  *Id.* at 5:59.

[75] *Id.* at Claim 65 (emphases added).

[76] *Id.* at 2:60-3:7 (discussing "a storing component configured to store a reference macroblock; a receiving component configured to receive a coding macroblock to be coded; . . . . and a decoding component configured to decode the coded macroblock based on the difference").

[77] *See Leader Techs.*, 692 F. Supp. 2d at 432-33; *see also  Eolas Techs., Inc. v. Adobe Sys., Inc.*, 810 F. Supp. 2d 795, 810 (E.D. Tex. 2011) ("The code and software in these claims describes sufficient structure to avoid the application of § 112, ¶ 6."); *Inventio AG*, 649 F.3d at 1357-60 (holding that "modernizing device" and a "computing unit" connoted sufficiently definite structure so as to preclude means-plus-function treatment); *Beneficial Innovations, Inc. v. Blockdot, Inc.*, No. 2:07-CV-263-TJW-CE, 2010 U.S. Dist. LEXIS 35784, at **39-42 (E.D. Tex. Apr. 12, 2010) (finding that "advertising selector" connoted sufficiently definite structure so as to preclude means-plus-function treatment); *Trading Techs. Int'l*, 2006 U.S. Dist. LEXIS 80153
(continued...)

2.    **"receiving component," "storing component," and "decoding component" should be given their plain meaning**

Because these terms are not means-plus-function terms, the only remaining issue is whether they require any construction at all.  Intravisual contends that they do not, and that each of the terms "receiving component," "storing component" and "decoding component" should be giving its plain and ordinary meaning.  However, to the extent that the Court deems construction necessary, the term "receiving component" should be construed as "software, hardware and/or any suitable combination thereof for receiving;" the term "storing component" should be construed as "software, hardware and/or any suitable combination thereof for storing;" and the term "decoding component" should be construed as "software, hardware and/or any suitable combination thereof for decoding."

The inventions of the '845 Patent are discussed in reference to "video conferencing systems" – indeed, it appears in the title of the patent.[78]  As known by those of ordinary skill in the art, such systems are comprised of a combination of hardware and software.  The patent even explains that "a video conferencing system according to the present invention . . . . comprises an external computer or other dedicated device 10 [and] data application 20," among other components.[79]  Further, Fig. 3 of the '845 Patent depicts "video codec 110," which includes, for example, "video *decoder* 320" and "*receiving* buffer 326."[80]  As mentioned above, it is well

_____

at **36-43 (finding that "program code" connoted sufficiently definite structure so as to preclude means-plus-function treatment).

[78] Ex. 1, '845 Patent at Title, 4:51.

[79] *Id.* at 4:52-56.

[80] *Id.* at 6:33-42 and Fig. 3 (emphasis added).

known that "codecs" are implemented in software and hardware, as are their component parts. Thus, Intravisual's constructions are supported by the specification as a whole.

## CONCLUSION

Intravisual's proposed constructions find full support in the intrinsic evidence. Moreover, Intravisual's proposed constructions provide meanings that will be accessible to a jury, and properly define the scope of the '845 Patent.  Intravisual thus respectfully requests that the Court adopt its proposed constructions.

Respectfully Submitted,

Date:  June 1, 2012

*/s/  Oliver C. Bennett*
Alan M. Fisch
District of Columbia Bar No. 453068
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC  20005
(202) 682-3500
(202) 682-3580 (facsimile)
alan.fisch@kayescholer.com

Oliver C. Bennett (*pro hac vice*)
New York State Bar No. 4006672
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000
(212) 836-6292 (facsimile)
oliver.bennett@kayescholer.com

*Attorneys for Intravisual Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2012, I electronically filed the foregoing with the Clerk of

the Court for the United States District Court for the Eastern District of Texas, Marshall

Division, via the CM/ECF system, which will send a notice of filing to all counsel of record who

have consented to service by electronic means.


*/s/ Oliver C. Bennett*