UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
INTRAVISUAL INC.                                :

                Plaintiff,     :

                         Case No. 2:10-cv-90-JRG
      v.                                 :

FUJITSU LIMITED ET AL.
                                                :
                Defendants.
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF INTRAVISUAL INC.'S REPLY CLAIM CONSTRUCTION BRIEF PURSUANT TO P.R. 4-5(c)**

                                        Alan M. Fisch
                                        Jason F. Hoffman
                                        KAYE SCHOLER LLP
                                        The McPherson Building
                                        901 Fifteenth Street, NW
                                        Washington, DC  20005
                                        (202) 682-3500
                                        alan.fisch@kayescholer.com
                                        jason.hoffman@kayescholer.com

Date: July 17, 2012                            *Attorneys for Intravisual Inc.*

**TABLE OF CONTENTS**

Page

I. "DIFFERENCE" CLAIM TERMS: "difference with the reference macroblock" and "encoded with the difference based on the reference macroblock" ............................. 1

II. "BIT" CLAIM TERMS: "difference bit" and "reference bit" .......................................... 4

III. "MACROBLOCK" CLAIM TERMS: "macroblock," "reference macroblock," and "coded macroblock" ...................................................................................................... 7

IV. "COMPONENT" CLAIM TERMS: "storing component," "receiving component," and "decoding component" ........................................................................ 8

CONCLUSION ................................................................................................................. 10

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Acumed LLC v. Stryker Corp.*,
 483 F.3d 800 (Fed. Cir. 2007)...................................................................................................6

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
 512 F.3d 1338 (Fed. Cir. 2008)...................................................................................................2

*CollegeNet, Inc. v. ApplyYourself, Inc.*,
 418 F.3d 1225 (Fed. Cir. 2005)...................................................................................................2

*Epistar Corp. v. Int'l Trade Comm'n*,
 566 F.3d 1321 (Fed. Cir. 2009)...................................................................................................1

*Gemstar-TV Guide Int'l, Inc. v. ITC*,
 383 F.3d 1352 (Fed. Cir. 2004)...................................................................................................9

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
 382 F.3d 1354 (Fed. Cir. 2004)............................................................................................9, 10

*Mas Hamilton Grp. v. LaGard, Inc.*,
 156 F.3d 1206 (Fed. Cir. 1998).................................................................................................10

*MIT v. Abacus Software*,
 462 F.3d 1344 (Fed. Cir. 2006).................................................................................................10

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005)...................................................................................................1

*Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*,
 438 F.3d 1123 (Fed. Cir. 2006)...................................................................................................3

*RF Delaware, Inc. v. Pac. Keystone Technologies, Inc.*,
 326 F.3d 1255 (Fed. Cir. 2003)...................................................................................................6

*SanDisk Corp. v. Memorex Products, Inc.*,
 415 F.3d 1278 (Fed. Cir. 2005)...............................................................................................3, 5

*Thorner v. Sony Computer Entm't Am. LLC*,
 669 F.3d 1362 (Fed. Cir. 2012)...................................................................................................2

*TI Group Auto. Sys., Inc. v. VDO N. Am. LLC*,
 375 F.3d 1126 (Fed. Cir. 2004)...................................................................................................2

Page(s)

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
    Nos. 04 C 5312 et al., 2006 U.S. Dist. LEXIS 80153 (N.D. Ill. Oct. 31, 2006) ....................... 9

*VLT Corp. v. Lambda Electronics, Inc.*,
    238 F. Supp. 2d 347 (D. Mass. 2003) *aff'd sub nom. VLT, Inc. v. Artesyn
    Technologies, Inc.*, 103 F. App'x 356 (Fed. Cir. 2004) .......................................................... 2

**STATUTES**

35 U.S.C. § 112, ¶ 6 ................................................................................................................. 8, 9

Pursuant to the Court's Docket Control Order (Dkt. No. 274) and P.R. 4-5(c), plaintiff Intravisual Inc. ("Intravisual") respectfully submits this reply in further support of its proposed constructions for claim terms and limitations in U.S. Patent No. 6,614,845 ("the '845 Patent").

### I.   "DIFFERENCE" CLAIM TERMS: "difference with the reference macroblock" and "encoded with the difference based on the reference macroblock"

As set forth in its opening brief, Intravisual submits that the claim terms using "difference" need no construction and should be given their plain meaning, as the term "difference" is readily understandable.[1]  Defendants, on the other hand, advocate for the importation of unrecited limitations into the definition of the simple term "difference," so as to require that the "difference" be calculated using a particular, exemplary embodiment disclosed by the specification.  As explained below, nothing in the intrinsic evidence requires such a limitation, and Defendants' unsupported constructions must be rejected.

More specifically, Defendants seek to read into the claims a requirement that the language "difference with the reference macroblock" refer to a "difference" that *must* be calculated by "subtracting each pixel of the 16 x 16 region to be coded with the corresponding pixel from the reference macroblock."[2]  Defendants first argue that the word "the" appearing in the claim language "a difference with ***the*** reference macroblock" somehow implies a requirement to use the whole reference macroblock in calculating the difference.[3]  However, the use of "the" in this context clearly has antecedent basis in the previously recited "*a* reference macroblock"

---

[1] Opening Br. (Dkt. No. 284) at 9, 13.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (where "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words").  *See also Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1334 (Fed. Cir. 2009) (noting the "heavy presumption that a claim carries its ordinary and customary meaning").

[2] Defendants' Br. at 14.

[3] Defendants' Br. at 14 (emphasis in original).

and thus merely refers back to the "reference macroblock" recited earlier in the claim.[4] It has no bearing on how the "difference" is calculated; there is simply no hint of a requirement that every pixel in the macroblock must be used.

Defendants next argue that the specification of the '845 Patent limits the explicit claim language. However, the Federal Circuit has warned that in the absence of a clear and unmistakable disclaimer, limitations cannot be imported from the specification into the claims, even where "the only embodiment, or all of the embodiments, contain a particular limitation."[5] Here, Defendants did not, and cannot, point to the requisite disclaimer because the language used in the '845 Patent is consistently broad with respect to how the difference is calculated, and, indeed, repeatedly describes it as a "comparison."[6]

Nevertheless, Defendants attempt to fabricate a disclaimer by discussing at length the embodiment shown in Figures 15, 16A, and 16B of the '845 Patent. However, the '845 Patent makes clear that this embodiment is merely *illustrative*.[7] Further, while a discrete cosine

---

[4] '845 Patent, 24:14-20 (claim 63) and 24:36-44 (claim 65). *See, e.g., Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1343 (Fed. Cir. 2008) ("the use of a definite article ('said' or 'the') to refer back to an initial indefinite article does not implicate, let alone mandate the singular. . . . Because the initial phrase carries no definitive numerosity, the anaphoric phrases do not alter that meaning in the slightest."). Further, the case cited by Defendants is not on point, as it involves the claim language "recycling *the* magnetizing energy stored in said transformer" but involves no antecedent basis. *VLT Corp. v. Lambda Electronics, Inc.*, 238 F. Supp. 2d 347, 349 (D. Mass. 2003) (emphasis added) *aff'd sub nom. VLT, Inc. v. Artesyn Technologies, Inc.*, 103 F. App'x 356, 358 (Fed. Cir. 2004).

[5] *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012); *see also CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1231 (Fed. Cir. 2005); *TI Group Auto. Sys., Inc. v. VDO N. Am. LLC¸* 375 F.3d 1126, 1136 (Fed. Cir. 2004).

[6] *See, e.g.,* '845 Patent, 4:25-27 ("comparing a coding macroblock to at least one other reference macroblock in order to determine a difference"); 11:64-66 ("differential macroblock coding results from the difference between the coding macroblocks and one of the reference macroblocks"); *id.* at Abstract, 4:40-44, 12:27-31, 12:39-42, and 13:40-47 (using "comparison").

[7] Figures 15, 16A, and 16B of the patent are discussed in the specification under the heading "Illustration of Operation" and constitute "one of many embodiments for implementing the

transform (DCT) value[8] is calculated for each pixel under this embodiment, the patent clearly states ― and Defendants concede ― that "*neither* DCT for coding nor IDCT (inverse DCT) for decoding *is actually required*, although they are used in the preferred implementation."[9] Thus, the patent explicitly covers embodiments beyond what is illustrated.

In addition, Defendants argue that the claim language "is encoded with the difference based on the reference macroblock," which was added during prosecution, acts as a disclaimer. However, this language is silent as to the method of calculating the "difference" and the patentee never commented on why it was added. Further, the patentee explained that similar limitations ― which do not use the critical language "based on the reference macroblock" ― were added to distinguish prior art that "does not disclose the use of 'a difference bit designating that the selected macroblock is encoded with the difference.'"[10] This explanation, however, is entirely unrelated to the method of calculating the "difference." Accordingly, the patentee did not make even an ambiguous disclaimer, let alone the clear and unambiguous disclaimer required, and Defendants' arguments must therefore be rejected.[11]

---

methods disclosed in this invention." '845 Patent, 13:13 and 15:30-32.

[8] '845 Patent, 14:6-12. DCT, known in the prior art, is "[on]e of the most common mathematical methods for reducing spatial redundancy." *Id.* at 1:37-43.

[9] '845 Patent, 12:6-9 (emphasis added); Defendants' Br. at 5-6 ("The specification . . . proposes the claimed technique . . . , *which can be done* with or *without first employing the transformation step* of the prior art H.263 method to convert to DCT values" (emphasis added)). *See* '845 Patent, 9:19-20 ("*One method* of block transformation . . . begins with 'discrete cosine transformation' (DCT)" (emphasis added)).

[10] *See* Hand Decl. (Dkt. Nos. 289-291), Ex. 1 at INTRA00000330 (explaining that this limitation was added to distinguish the Kerdranvat reference). The Examiner's rejection based on Kerdranvat related to the use of adjacent blocks, not to the method for calculating any "difference." *Id.* at INTRA00000162. *See also id.* at INTRA00000317-322 (adding limitation to eight claims, only two of which include the language "based on the reference macroblock").

[11] *Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006) (explaining that disclaimer requires that the patentee made "a clear and unmistakable disavowal of scope during prosecution"); *SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1287

3

Similarly, Defendants argue that a statement made during prosecution explaining that the invention is directed to a technique "using macroblocks as the basis of comparison" is a disclaimer. Again, this statement is entirely unrelated to using every pixel of the macroblock during the difference calculation.[12] Indeed, the context and subsequent Examiner interview notes show that the issue was interframe versus intraframe coding — *i.e.* whether the reference macroblock is located in the same frame or a different frame as the coded macroblock.[13]

Defendants' reliance on the appeal to the Board of Patent Appeals and Interferences ("BPAI") during prosecution is similarly off-target, as the appeal concerns distinguishing the claimed intraframe coding techniques from error correction techniques disclosed in the Fujii reference. As explained by the BPAI: "instead of the claimed encoding a selected macroblock based on its difference compared to an adjacent macroblock, Fujii reconstructs an error block by intrafield interpolation based on the data from two adjacent blocks . . . ."[14] As can be seen by a perusal of the statements cited by Defendants, at no time in the appeal — or anytime during prosecution — did the patentee make a "clear and unmistakable disavowal" concerning the "difference" calculation. Thus, Defendants' constructions must be rejected.

## II. "BIT" CLAIM TERMS: "difference bit" and "reference bit"

Defendants advocate for unduly narrow constructions of the terms "difference bit" and "reference bit" by attempting to import limitations into the claims based on the specification and prosecution history. First, Defendants point to a statement made during prosecution that "only a one bit [sic] is needed to identify the position of the reference macroblock" and argue that a

---

(Fed. Cir. 2005) (explaining that even an "ambiguous disclaimer" is not enough).

[12] Defendants' Br. at 10-11 (citing Hand Decl., Ex. 1 at INTRA00000391).

[13] *See* Hand Decl., Ex. 1 at INTRA00000416. Indeed, the subsequent amendment shows nothing about the "difference." *Id.* at INTRA00000422-430 (amending claims only to add limitation "without reference to any other frame").

[14] *Id.* at INTRA00000692.

4

"reference bit" is limited to "one bit."[15] However, this statement merely explains that a single bit is *sufficient* to identify the position of the reference macroblock; it does not act as a disclaimer.[16] Furthermore, in context, it is clear that this statement was made to elucidate the claim language "an adjacent positional relationship," which was added to distinguish the Esserman reference. The patentee explained that, while Esserman "compares the selected block of data to all other blocks in the picture," it does not "compare the selected block of data to other blocks of data that are in a positional relationship."[17] As further support that only reference macroblocks found in "an adjacent positional relationship" would be used, the patentee explained that even a "single bit" — set at 0 or 1 to indicate "above" or "left" — could be used to identify the location of the reference macroblock. Any other reference macroblock location would require additional bits. Thus, the statement discusses a "single bit" to clarify other claim language, but makes no "clear and unmistakable disavowal" that a "reference bit" is limited to only one bit.

Second, regarding "difference bit," Defendants do not and cannot point to any statement of "clear and unmistakable disavowal" in the prosecution. As discussed above, the language "a difference bit designating that the selected macroblock is encoded with the difference" was added to further distinguish the Kerdranvat reference, but the Examiner's rejection based on Kerdranvat related to the use of adjacent blocks, not to the nature of the "difference bit."[18] Thus, Defendants' arguments of disavowal of claim scope during prosecution must again fail.

Next, Defendants seek to import limitations from the specification by pointing to "IP_MB" and "A/L," which are one-bit components in the preferred embodiment. However, it is

---

[15] Defendants' Br. at 12 (citing Hand Decl., Ex. 1 at INTRA00000327).

[16] *See SanDisk*, 415 F.3d at 1287 (an "ambiguous disclaimer" is not enough).

[17] Hand Decl., Ex. 1 at INTRA00000327.

[18] *See id.* at INTRA00000162.

5

well-established that reading features of the preferred embodiment into the claims is improper.[19] Defendants also rely on Fig. 10, but this is merely "a block diagram of *an* embodiment" of macroblock coding.[20] As discussed above, limitations from an embodiment cannot be imported into the claims.[21] Furthermore, the patent explicitly contemplates the use of more than one bit for these components.[22]

Moreover, Defendants' proposed construction contradicts the specification, and must be rejected for this reason as well. The asserted claims are directed to "decoding" video data transmitted in a bit stream that was coded in one of many possible ways. The patent explains: "Video codec 110 implements the H.263/H.261 video coding standards, " but "H.263 does not require a specific coding strategy."[23] Accordingly, figures 8-11 of the patent are syntax diagrams that merely "demonstrate[] *some* of the available coding options."[24] However, it is clear that such syntax will be compressed into a bit stream by, for example, "entropy encoding," which "makes additional adjustments to the quantum of the bit stream based on statistical characteristics."[25] Thus, a single "bit" of information to be communicated will not necessarily

---

[19] *See, e.g., Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (Fed. Cir. 2007) ("this argument is an improper attempt to read a feature of the preferred embodiment into the claim").

[20] '845 Patent, 3:41-43 and 12:12-13 (emphasis added). Defendants also rely on a statement at 14:67-15:1, but this too is part of an exemplary embodiment described as an "Illustration of Operation." *Id.* at 13:13 and 14:47 ("Continuing with the above illustration [. . .]").

[21] *Supra* at n.5. Further, that the patent mentions "greater efficiency" with use of one-bit is of no moment. *See, e.g., RF Delaware, Inc. v. Pac. Keystone Technologies, Inc.*, 326 F.3d 1255, 1264 (Fed. Cir. 2003) ("district court also erred in reading the limitations of the specification incorporating the 'most preferred embodiment' into the claim limitation").

[22] Opening Br. at 12 and 15.

[23] '845 Patent, 5:56-59; 5:14-17.

[24]*Id.* at 10:48-52 ("FIG. 8 illustrates a syntax diagram . . . for various coding strategies"); *id.* at 12:10-12 ("FIG. 9 illustrates an embodiment of a macroblock syntax diagram using the standard H.263 coding options"); *id.* at 12:64-66 (noting that figures 10 and 11 are syntax diagrams).

[25] *Id.* at 9:58-65; *see id.* at 7:14-18.

6

correlate to one bit in the bit stream; as the patent recognizes, "significantly *fewer bits will be produced*."[26] Therefore, one of ordinary skill would understand that the "difference bit" and "reference bit" have been compressed and coded into a bit stream and would not be restricted to a particular number of bits.[27] Intravisual's proposed construction allows for this.

Finally, Defendants attempt to add a limitation to the claims that the difference and reference bits must be "associated with each coded macroblock." Defendants point to the plain language of the claims for support, but the claims merely state that "the step of receiving a coded macroblock *includes* the substep of receiving a difference bit."[28] There is no suggestion that the claims require an "association."

### III. "MACROBLOCK" CLAIM TERMS: "macroblock," "reference macroblock," and "coded macroblock"

The term "macroblock" never appears alone in the asserted claims; it is used only in tandem with "reference" and "coded." Thus, Intravisual does not believe that this term must be separately construed, but, should the Court do so, it should be given its plain meaning. In addition, Defendants' construction of "macroblock" should be rejected because the terms "reference macroblock" and "coded macroblock" in the claims are accompanied by language limiting each to "a single frame" or "the same frame."[29] There is thus no reason to mirror that language, as in Defendant's proposed construction.[30]

Similarly, although Intravisual agrees with Defendants that the "reference macroblock"

---

[26] *Id.* at 7:28-31 (emphasis added).

[27] Indeed, the data may be "analogue," and thus would not have any bits at all. *Id.* at 6:48-53.

[28] '845 Patent, 24:23-27 (emphasis added) and 28-32; *id* at 24:48-52 and 53-56 (using analogous language in claims 65 and 66).

[29] '845 Patent, 24:14-15 and 36-39.

[30] Additionally, Intravisual notes that Defendants are satisfied with constructions of "difference with the reference macroblock" and "reference macroblock" that recite "16 x 16" without the word "pixels," and sees no reason why the term "macroblock" should be construed differently.

7

must have a different location than the coded macroblock, this is explicitly set forth in the claims and there is no reason to repeat it in the construction of "reference macroblock."[31]

Defendants also argue without any basis that Intravisual's proposed construction of "coded macroblock" is "an improper attempt to inject ambiguity solely as a litigation tactic."[32] As an initial matter, Intravisual proposed that the plain meaning of this term should govern, and only provided an alternative construction should the Court decide to construe it. Further, Intravisual's construction reflects the plain meaning of the term "coded" combined with its consistent position on the term "macroblock." Defendants' construction of "coded macroblock," in contrast, is unhelpful because it merely repeats the word "macroblock."

## IV. "COMPONENT" CLAIM TERMS: "storing component," "receiving component," and "decoding component"

Defendants aim to invalidate claims 65 and 66 by arguing that the terms "storing component," "receiving component," and "decoding component" are means-plus-function limitations, and then arguing that the "storing component" is indefinite for allegedly failing to disclose corresponding structure under § 112, ¶ 6.[33] Defendants' litigation-inspired construction, however, must be rejected, as each of the foregoing terms ― which do not recite the term "means" ― disclose sufficient structure so as to avoid § 112, ¶ 6 treatment.

Defendants argue ― without support ― that the terms at issue do not connote "specific" structures; indeed, they have withdrawn the Declaration of Dr. Stevenson,[34] on whom they primarily relied. Regardless, the law does not mandate an exacting standard as Defendants

---

[31] Opening Br. at 7-8 & n.32.

[32] Defendants' Br. at 22.

[33] *See* Defendant Texas Instruments Inc.'s Motion for Summary Adjudication of Invalidity of Claims 65-66 of U.S. Patent No. 6,614,845 (Dkt. No. 287). To the extent the terms-at-issue are construed under § 112, ¶ 6, corresponding structure is disclosed by the specification for each term, as explained in Intravisual's opposition to that motion.

[34] Dkt. No. 295.

8

argue.[35] On the contrary, a term can avoid means-plus-function treatment "even if the term covers a broad class of structures and even if the term identifies structures by their function," so long as the term designates structure to a person of skill in the art.[36] Here, "storing component" plainly should not be accorded means-plus-function treatment, as the Federal Circuit has held that "storage means" has a clear meaning to one of ordinary skill in the art.[37] Furthermore, each of the terms at issue designate structure, as the specification explains that a "component" is hardware, software, or a combination thereof, which Defendants do not deny is structural.[38]

Moreover, claim 65 explains the structure of each term-at-issue by disclosing the *configuration* of the structure. For instance, claim 65 recites that the "storing component" is "*configured* to store a reference macroblock from a single frame."[39] Notably, Defendants admit that such language can add structure to the terms-at-issue,[40] but attempt to discount the language by making the unsupported assertion that the language was not "generally well-understood in the art." Defendants' position is untenable and irreconcilable with their earlier assertion that the

---

[35] *See, e.g., Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, Nos. 04 C 5312 et al., 2006 U.S. Dist. LEXIS 80153, at *38 (N.D. Ill. Oct. 31, 2006) (explaining that "the Federal Circuit has not required the claim term to set forth a specific structure" to avoid § 112, ¶ 6 treatment).

[36] *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359-60 (Fed. Cir. 2004).

[37] *See Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352, 1371-72 (Fed. Cir. 2004).

[38] *See* '845 Patent at 5:13-20 (describing "codecs" as components) and *id*. at 5:59 ("The term 'codec' refers to a coder decoder."). Defendants attack Intravisual's argument because the claims do not use the term "codec." Defendants miss the point. The specification describes "codecs" as components, and because codecs are widely known to be hardware and/or software, components are likewise hardware or software under the '845 Patent.

[39] Defendants seize on similar language in the specification which appears in close proximity to the word "method," and argue that the patentee "acted as his own lexicographer" to define the terms at issue as functional. Putting aside the fact that such an argument finds no support in the law, the portion of the specification on which Defendants rely actually indicates that the terms are structural. For instance, the cited portion of the specification explains "storing component" is "*configured to store* a reference macroblock," indicating that the "storing component" is hardware or software with a particular configuration.

[40] Defendants' Br. at 25.

'845 patent merely presents a "narrow" improvement over the existing H.263 standard.[41]

Defendants also argue that if the claim terms are structural, then method claim 63 would be invalid because a claim that covers both a method and apparatus is indefinite. Defendants' argument, however, does not pass muster, as none of these terms are even recited by claim 63.

Finally, the cases on which Defendants rely on are inapposite here.[42] For instance, in *Mas-Hamilton*, the prosecution record showed that the patentee had used the terms "member," "element," and "means" interchangeably.[43] No such circumstances exist here. Similarly, in *MIT v. Abacus Software*, the patent's specification used the terms "mechanism" and "means" synonymously, and a dictionary definition equated "mechanism" with "means."[44] Again, no such circumstances exist here. Moreover, in none of the cases cited by Defendants did the claim language explain the *configuration* of the structure of the terms at issue.

Defendants have accordingly failed to overcome the strong presumption that the terms at issue are not means-plus-function limitations.

## CONCLUSION

Intravisual's proposed constructions find full support in the intrinsic evidence, provide meanings that will be accessible to a jury, and properly define the scope of the '845 Patent. Intravisual thus respectfully requests that the Court adopt its proposed constructions.

---

[41] Defendants' Br. at 15.

[42] Defendants' attempts to distinguish the case law on which Intravisual relies likewise must be disregarded, because, as explained in Intravisual's opening brief, the cases on which Intravisual relies do not each turn on definitions in dictionaries or the specification.

[43] *See Lighting World*, 382 F.3d at 1362 (discussing *Mas Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206 (Fed. Cir. 1998)).

[44] 462 F.3d 1344, 1354 (Fed. Cir. 2006).

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Date: July 17, 2012 | */s/ Alan M. Fisch*<br>Alan M. Fisch<br>District of Columbia Bar No. 453068<br>Jason F. Hoffman (*pro hac vice*)<br>District of Columbia Bar No. 467827<br>KAYE SCHOLER LLP<br>The McPherson Building<br>901 Fifteenth Street, NW<br>Washington, DC  20005<br>(202) 682-3500<br>(202) 682-3580 (facsimile)<br>alan.fisch@kayescholer.com<br>jason.hoffman@kayescholer.com<br><br>*Attorneys for Intravisual Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2012, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Texas, Marshall Division, via the CM/ECF system, which will send a notice of filing to all counsel of record who have consented to service by electronic means.

*/s/ Alan M. Fisch*